1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RENAT YAKUB,

                Plaintiff,

        v.

QATAR AIRWAYS GROUP (Q.C.S.C),

                Defendant.

Case No.  25-cv-04142-JCS

**ORDER TO SHOW CAUSE**

## I.    INTRODUCTION

Plaintiff Renat Yakub, pro se, applied to proceed in forma pauperis and the Court granted Plaintiff's application.  The Court now reviews the sufficiency of Plaintiff's complaint to determine whether it satisfies 28 U.S.C. § 1915(e)(2)(B).  Because the complaint does not appear to establish federal jurisdiction, Plaintiff is ORDERED TO SHOW CAUSE why the complaint should not be dismissed.  Plaintiff may file either an amended complaint or a response to this order addressing why his complaint is sufficient no later than **August 8, 2025**.  The Case Management Conference set for **August 13, 2025** is vacated.

## II.    ALLEGATIONS OF THE COMPLAINT[1]

In the Complaint, Plaintiff alleges that on March 28, 2025, he purchased a round-trip airline ticket from Qatar Airways ("the Airline") to fly from San Francisco International Airport

---

[1] Because the factual allegations of a plaintiff's complaint are generally taken as true in the context of determining whether the complaint states a claim, this section summarizes Plaintiff's allegations as if true.  Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case

United States District Court
Northern District of California

1   ("SFO") to Almaty International Airport ("ALA"), in Kazakhstan, on April 9, 2025, with a return

2   flight from ALA to SFO on May 6, 2025.  Compl. at p. 3. Based on an exhibit attached to the

3   complaint, it appears that the ticket was purchased through a third party, justfly.com.  On May 5,

4   2025, Plaintiff called the Airline to change the departure date of the return flight to May 7, 2025

5   and paid $592.36 on a debit card to make the change.  *Id.*; *see also id.* at p. 13 (stating that he had

6   paid with a "3rd party debit card").  The Airline "issued a new ticket number" but when Plaintiff

7   arrived at ALA to check in, on May 7, 2025, he was informed that the ticket had been cancelled

8   due to failure to pay.  *Id.* at p. 3. Plaintiff called the bank, which confirmed that the payment was

9   "valid" and that the "money [was] still pending" to the Airline, but the Airline refused to reissue

10  the ticket for the flight that day because no seats were available.  *Id.* The Airline offered only to

11  sell him a ticket for a flight on a "new date" at a higher price.  *Id.* Instead, Plaintiff purchased a

12  ticket on a Turkish Airlines flight departing ALA for SFO on the same date (May 7, 2025) that

13  had a seat available, for which he paid approximately $1,466.90.  *Id.*  Plaintiff alleges that the

14  Airline's terms and conditions allow payment using a third party's card so long as the passenger

15  can provide an authorization form from the third party and a copy of the card.  *Id.*  Plaintiff alleges

16  he "ha[d] this form from his friend" but his ticket was cancelled nonetheless.  *Id.*

17          Plaintiff states in the Complaint that there is federal jurisdiction in this case based on the

18  existence of a "federal question," listing the following "federal law[s]" and "right[s]": "Montreal

19  convention, IATA Rules, Enjust [sic] enrichment, NIED, Breach contract, False ADV."  *Id.* at p.

20  2.  He asserts ten claims in his complaint:  1) delay in violation of Article 19 of the Montreal

21  Convention (Claim One); 2) unfair and deceptive business practices in violation of California's

22  Unfair Competition Law ("UCL") and "FTC/DOT Rules" (Claim Two); 3)  false advertising

23  under California Business and Profession Code §§ 17500 *et seq.* (Claim Three); 4) unjust

24  enrichment (Claim Four); 5) breach of contract (Claim Five); 6) negligent infliction of emotional

25  distress (Claim Six); 7) unauthorized refund/refund abuse under California Civil Code section

26  1723 (Claim Seven); 8) breach of covenant of good faith and fair dealing (Claim Eight); 9)

27  violation of DOT regulations, 14 C.F.R. Part 399 (Claim Nine); and 10) fraud and

28  misrepresentation (Claim Ten).  Plaintiff asks the Court to award the following relief:  1)

1    "Defendant should refund Plaintiff cost of ticket $963.95 and expenses $1466.90 for new ticket[;]"

2    2) "Defendant should pay Plaintiff compensation $1700 for cancelled ticket[;]" 3) "Defendant

3    should pay Plaintiff $147 as 10% penalty for using Plaintiff's money[;]" 4) "Defendant should pay

4    Plaintiff for emotional distress and punitive damages[;]" and 5) "Defendant should change

5    booking system and fix unathorized [sic] refund." *Id.* at p. 14.

6    **III.    ANALYSIS**

7        **A.    Legal Standards Under 28 U.S.C. § 1915 and Rule 12(b)(6)**

8            Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave

9    to proceed in forma pauperis, courts must engage in screening and dismiss any claims which:

10    (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek

11    monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see*

12    *Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).   In addition, the Court must dismiss a

13    complaint where no basis for federal jurisdiction is apparent from the allegations.  *Cato v. United*

14    *States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

15            To state a claim for relief, a plaintiff must make "a short and plain statement of the claim

16    showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   Further, a claim may be

17    dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6);

18    *see also Diaz v. Int'l Longshore and Warehouse Union, Local* 13, 474 F.3d 1202, 1205 (9th Cir.

19    2007).  In determining whether a plaintiff fails to state a claim, the court takes "all allegations of

20    material fact in the complaint as true and construe[s] them in the light most favorable to the non-

21    moving party."  *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975

22    (9th Cir. 2007).  However, "the tenet that a court must accept a complaint's allegations as true is

23    inapplicable to legal conclusions [and] mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S.

24    662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "do not

25    necessarily assume the truth of legal conclusions merely because they are cast in the form of

26    factual allegations." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal

27    quotation marks omitted).  The complaint need not contain "detailed factual allegations," but must

28    allege facts sufficient to "state a claim to relief that is plausible on its face."  *Id*. at 678 (citing

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Twombly*, 550 U.S. at 570).

2          Where the complaint has been filed by a pro se plaintiff, courts must "construe the

3    pleadings liberally . . . to afford the petitioner the benefit of any doubt."  *Hebbe v. Pliler*, 627 F.3d

4    338, 342 (9th Cir. 2010).  "A pro se litigant must be given leave to amend his or her complaint

5    unless it is absolutely clear that the deficiencies in the complaint could not be cured by

6    amendment."  *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds

7    by statute, as recognized in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc).  Further,

8    when it dismisses the complaint of a pro se litigant with leave to amend, "the district court must

9    provide the litigant with notice of the deficiencies in his complaint in order to ensure that the

10   litigant uses the opportunity to amend effectively."  *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d

11   1258, 1261 (9th Cir. 1992)).

12        **B.     Federal Jurisdiction**

13        The two most common forms of federal subject matter jurisdiction are federal question

14   jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332.  Plaintiff

15   asserts that there is federal question jurisdiction in this case.  Under 28 U.S.C. § 1331, "[t]he

16   district courts shall have original jurisdiction of all civil actions arising under the Constitution,

17   laws, or treaties of the United States."  Generally, "the presence or absence of federal-question

18   jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal

19   jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly

20   pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). However, there is a

21   narrow exception to the well-pleaded complaint rule where state law claims are found to fall under

22   the complete preemption doctrine, meaning that even where a complaint purports to raise only

23   state law claims, those claims are necessarily federal in nature and therefore give rise to federal

24   jurisdiction. *See Akrami v. Brit. Airways PLC*., No. C 01-02882 SC, 2002 WL 31031324, at *3–5

25   (N.D. Cal. Sept. 10, 2002).

26        Here, Plaintiff asserts three claims that purport to raise a federal question, asserting

27   violation of a treaty – the Montreal Convention – in Claim One and invoking "FTC/DOT Rules"

28   and "DOT Regulations" in Claims Two and Nine, respectively.  The Court finds that Plaintiff's

4

United States District Court
Northern District of California

1    allegations are insufficient to state any viable federal claim on these grounds.  The Court further

2    concludes that there is no federal question jurisdiction under the complete preemption doctrine.[2]

3                **1.    Whether there is Federal Jurisdiction Under the Montreal Convention**

4                        a.    Background

5          The Montreal Convention was signed on May 28, 1999, and entered into force on

6    November 4, 2003. *Serrano v. Am. Airlines, Inc*., No. CV08-2256 AHM (FFMX), 2008 WL

7    2117239, at *3 (C.D. Cal. May 15, 2008) (citing Convention for the Unification of Certain Rules

8    for International Carriage by Air, May 28, 1999, reprinted in S. Treaty Doc. No. 106-45). Both the

9    United States and Kazakhstan are signatories.  *See* https://www.icao.int/secretariat/legal/lists/

10   current%20lists%20of%20parties/allitems.aspx.  "The Montreal Convention supersedes the much

11   older Warsaw Convention." *Serrano*, 2008 WL 2117239, at *3 (citing Montreal Convention, art.

12   55).   The Montreal Convention, like the Warsaw Convention, was enacted to "promote uniformity

13   in the laws governing airliner liability for the 'international carriage of persons, baggage or cargo

14   performed by aircraft.'" *Id.* (quoting Montreal Convention, art. 1). "However, the Montreal

15   Convention is unique in that it 'represents a significant shift away from a treaty that primarily

16   favored airlines to one that continues to protect airlines from crippling liability, but shows

17   increased concern for the rights of passengers and shippers.' " *Id.* (quoting *Weiss v. El Al Israel*

18   *Airlines, Ltd*., 433 F.Supp.2d 361, 364-65 (S.D.N.Y. 2006)).

19         The Montreal Convention establishes three categories of liability with respect to air

20   carriers.  First, Article 17 provides for carrier liability in the event of accidental death or bodily

21   injury of a passenger while on board, embarking, or disembarking the plane and for damage to or

22

23   ---

24   [2]Plaintiff does not invoke diversity jurisdiction in his complaint.  Nor does he allege that his
     damages exceed $75,000, as is required to establish diversity jurisdiction.  Rather, in his prayer, he
     seeks under $5,000 in damages and an unspecific amount for "emotional distress and punitive
25   damages." While "[t]he amount in controversy alleged by the proponent of federal jurisdiction . . .
     controls so long as the claim is made in good faith[,]" dismissal for lack of diversity jurisdiction is
26   appropriate where it is  "obvious [from the face of the complaint] that the suit cannot involve the
     necessary amount." *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102,
27   1106 (9th Cir. 2010) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co*., 303 U.S. 283, 292,
     (1938)). Here, it is apparent from the face of the complaint that the amount-in-controversy
28   requirement is not met and therefore, as currently pled, there is no diversity jurisdiction under 28
     U.S.C. § 1332.

1    loss of baggage. Montreal Convention,  art. 17. Second, Article 18 creates liability for damage to

2    cargo. *Id.*, art. 18.  Third, Article 19 imposes liability for damages resulting from delay of

3    passengers, baggage, or cargo. *Id.*, art. 19.  In particular, Article 19, entitled "Delay," provides:

4           The carrier is liable for damage occasioned by delay in the carriage
       by air of passengers, baggage or cargo. Nevertheless, the carrier shall
5           not be liable for damage occasioned by delay if it proves that it and
       its servants and agents took all measures that could reasonably be
6           required to avoid the damage or that it was impossible for it or them
       to take such measures.
7

8    *Id.* Art. 19.  Article 29, entitled "Basis of Claims," limits actions for damages, providing:

9           In the carriage of passengers, baggage and cargo, any action for
       damages, however founded, whether under this Convention or in
10          contract or in tort or otherwise, can only be brought subject to the
       conditions and such limits of liability as are set out in this Convention
11          without prejudice to the question as to who are the persons who have
       the right to bring suit and what are their respective rights. In any such
12          action, punitive, exemplary or any other non-compensatory damages
       shall not be recoverable.
13

14    *Id.*, art. 29.

15                      b.   Discussion

16         In Claim One, Plaintiff asserts that the Airline violated Article 19 of the Montreal

17    Convention imposing liability for delay of passengers and baggage.[3] The Court finds, however,

18    that Plaintiff's claim is not for delay but instead, for nonperformance of a contract.  In particular,

19    Plaintiff's claim is based on the Airline's outright refusal to honor the ticket he had purchased

20    when it canceled the ticket because of his use of a third-party debit card.  Indeed, the exhibits

21    attached to the Complaint reflect that the delay that Plaintiff likely experienced as a result of the

22

23    [3] Claim One also cites to "article 26" of the Montreal Convention, asserting that under that
       provision a "passenger has a right to compensation to reimburse actual expenses."  Compl. at p. 4.
24    In fact, Article 26 is entitled "Invalidity of Contractual Provisions" and provides:
              Any provision tending to relieve the carrier of liability or to fix a lower limit than that
25             which is laid down in this Convention shall be null and void, but the nullity of any such
          provision does not involve the nullity of the whole contract, which shall remain subject to
26             the provisions of this Convention.
       Montreal Convention, Art. 26.  That section does not address the right to reimbursement for actual
27    expenses.  Likewise, Claim One refers vaguely to "IATA rules  [that] set standards and guidelines
       for airlines to handle refunds and ensure that refunds are made in accordance with applicable laws
28    and regulations." Compl. at p. 4.  Plaintiff does not, however, identify a specific standard or
       guideline or explain why it applies in this case.

1    cancellation of his ticket was negligible as the flight he purchased on Turkish Airlines was

2    scheduled to arrive at SFO within three hours of the Qatar Airways flight that he had booked.

3    Consequently, this claim does not state a claim for violation of Article 19.

4        The facts here are similar to the facts in *In re Nigeria Charter Flights Cont. Litig.*, 520 F.

5    Supp. 2d 447, 453 (E.D.N.Y. 2007). In that case, a travel service entered into an agreement with

6    World Airways for charter flights between various cities in the United States and Lagos, Nigeria.

7    520 F. Supp. 2d at 450.  The travel service fell behind on its payments and World Airways

8    eventually ceased operations between the United States and Nigeria.  *Id.*  As a result, "hundreds of

9    passengers who had purchased tickets for flights in 2004 were unable to travel [and] [s]ome

10   passengers, having flown the outbound legs of their round trips already, were stranded in airports

11   far from home."  *Id.*  Although World Airways agreed to fly some of the stranded passengers back

12   to the United States, others "had to arrange their own alternative transportation after being

13   stranded."  *Id.*  at 451.

14       The court concluded that the plaintiffs' claims did not fall within the scope of the delay

15   provision of the Montreal Convention, finding that the facts were analogous to the facts of *Wolgel*

16   *v. Mexicana Airlines*, 821 F.2d 442 (7th Cir.1987).  *Id.* at 454.  The court explained:

> As World observes, several courts, when presented with claims based
> on airlines' refusal to fly passengers, have construed those claims as
> sounding in delay within the scope of Article 19 of the Warsaw
> Convention. [Citations omitted]. However, in each of these cases, as
> well as in others reaching similar conclusions, circumstances existed
> which militated in favor of a finding of delay, and are absent here. In
> some, the defendant airlines ultimately provided plaintiffs with
> transportation.[Citations omitted]. In others, plaintiffs either secured
> alternate transportation without waiting to find out whether the
> defendant airlines would transport them, [citations omitted] or refused
> an offer of a later flight, [citations omitted].  In still others, plaintiffs
> never actually alleged nonperformance. [Citations omitted].
>
> Here, by contrast, plaintiffs have shown that World simply refused to
> fly them, without offering alternate transportation.  Although World
> flew more than 300 stranded passengers from Lagos to New York in
> a single flight on January 19, 2004, and subsequently returned 20
> other stranded passengers from the United States to Lagos, World
> arranged transportation for these individuals only after explicitly
> disavowing any obligation to do so—indeed, it described the January
> 19 flight as "a humanitarian gesture of goodwill." Consent Order 3.
> Moreover, World conducted these flights only after "considerable

United States District Court
Northern District of California

United States District Court
Northern District of California

discussion" with the enforcement division of the United States Department of Transportation. . . . Meanwhile, many other stranded passengers were simply abandoned. That some plaintiffs were flown on the first legs of their flights does not alter the Court's conclusion. *See Weiss v. El Al Israel Airlines, Ltd.*, 433 F.Supp.2d 361, 367 (S.D.N.Y.2006) ("[T]hat the airline provided one flight according to contract does not necessarily render the failure to provide carriage on another flight a mere delay rather than a total failure to perform."); see also 9 Arthur Linton Corbin, Contracts § 945 (interim edition 2002) ("A breach of contract may be large or small, total or partial. A debtor may pay nine-tenths of his debt, but fail to pay the other tenth. He has committed a breach of contract.").

Because World simply refused to transport plaintiffs, rather than merely delaying them, the facts of this case are analogous, not to the cases World cites, but to a Seventh Circuit decision relied upon by plaintiffs, *Wolgel v. Mexicana Airlines*, 821 F.2d 442 (7th Cir.1987). The plaintiffs in *Wolgel* were purchasers of round-trip tickets from Chicago to Acapulco on Mexicana Airlines. *Id.* at 442. They were bumped from their flight but not placed on a later Mexicana flight. *Id.* at 445. Observing that the plaintiffs had "never left the airport," the Seventh Circuit construed their claim as sounding in nonperformance, not delay. *Id.* Next, in order to determine whether the plaintiffs' claims were preempted by the Warsaw Convention, the court looked to the Convention's drafting history, and found that the delegates to the Convention had concluded that "there was no need for remedy in the Convention for total nonperformance of the contract, because in such a case the injured party has a remedy under the law of his or her home country." *Id.* at 444 (citing Second International Conference on Private Aeronautical Law, Minutes 76–77 (R. Horner & D. Legrez trans.1975)). Thus the delegates had "agreed that the Convention should not apply to a case of nonperformance of a contract." *Id.* In view of this history, the court held, the plaintiffs' claims were not preempted.

*Id.* at 453-454. Here, as in *In re Nigeria Charter Flights Contract Litigation* and *Wolgel*, it is alleged that the Airline refused outright to honor Plaintiff's ticket, telling him that he would need to purchase a new return ticket for a different date and at a higher price. Therefore, the Court concludes it is a claim for nonperformance of a contact and not for delay under Article 19 the Montreal Convention.

### 2.  Whether there is Federal Jurisdiction Under "FTC/DOT Rules"

In Claim Two, Plaintiff asserts that defendant has engaged in false advertising, invoking (in addition to California's UCL) two federal statutes:  15 U.S.C. § 45 and 49 U.S.C. § 41712. Neither gives rise to federal jurisdiction in this case.

The former provision is part of the Federal Trade Commission Act ("FTCA"), which "vests remedial power solely in the Federal Trade Commission and does not grant a private cause

8

1    of action." *Cornelis v. B & J Smith Assocs. LLC*, No. CV-13-00645-PHX-BSB, 2014 WL

2    1828891, at *4 (D. Ariz. May 8, 2014) (citing 15 U.S.C. § 45(a)(2); *Dreisbach v. Murphy*, 658

3    F.2d 720, 730 (9th Cir.1981) (finding that "private litigants may not invoke the jurisdiction of the

4    federal district courts by alleging that defendants engaged in business practices proscribed by §

5    5(a)(1)."); *Carlson v. Coca–Cola Co.*, 483 F.2d 279, 280 (9th Cir.1973) ("The protection against

6    unfair trade practices afforded by the Act vests initial remedial power solely in the Federal Trade

7    Commission")).  Likewise, "[t]he prohibition on unfair or deceptive practices in 49 U.S.C. §

8    41712 has been held not to create a private right of action."  *Bailey v. Rocky Mountain Holdings,*

9    *LLC*, 889 F.3d 1259, 1269 (11th Cir. 2018) (citing *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 519–

10    20 (5th Cir. 2002); *Polansky v. Trans World Airlines, Inc.*, 523 F.2d 332, 340 n. 21 (3d Cir.

11    1975)). Rather, "[i]t is 'a means of vindicating the public interest' and does not provide 'a remedy

12    for private wrongs.' " *Id.* (quoting *Pan Am. World Airways, Inc. v. United States*, 371 U.S. 296,

13    306 (1963)).

14          Accordingly, neither of these federal statutes gives rise to federal jurisdiction.

15                    **3.    Whether DOT Regulations Give Rise to Federal Jurisdiction**

16          In Claim Nine, Plaintiff invokes "DOT Regulations 14 C.F.R. Part 399."  Part 399 contains

17    "Statements of Policy" that "will be observed by" the Department of Transportation.  *See* 14

18    C.F.R. § 399.4.  It does not contain any private remedies that would give rise to federal

19    jurisdiction in this case.  Furthermore, courts that have addressed DOT regulations governing

20    airlines' obligations with respect to compensation of "bumped" passengers have concluded that

21    those regulations do not give rise to a private right of action. *See Kalick v. Nw. Airlines Corp.*, No.

22    CIV. 08-2972JBSAMD, 2009 WL 2448522, at *4 (D.N.J. Aug. 7, 2009), aff'd, 372 F. App'x 317

23    (3d Cir. 2010) ("with regard to the separate issue of 'whether the regulations [in 14 C.F.R. §

24    250.1, *et seq.*]  not only permit a state contract law action for being bumped, but affirmatively

25    provide for a federal right of action, whether for bumping or anything else,' courts within and

26    outside this Circuit have consistently answered this question in the negative.").  Therefore,

27    Plaintiff has not established federal jurisdiction based on any violation of DOT regulations.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### 4. Whether Plaintiffs' State Law Claims Give Rise to Federal Jurisdiction Under the Doctrine of Complete Preemption

The "touchstone" for determining whether the compete preemption doctrine applies is the intent of Congress. *Akrami v. Brit. Airways PLC.*, No. C 01-02882 SC, 2002 WL 31031324, at *3–5 (N.D. Cal. Sept. 10, 2002). *Id.* (citing *Metropolitan Life Inc. Co. v. Taylor*, 481 U.S. 58, 66 (1987)). "This doctrine only applies in a narrow class of cases in which the preemptive force of federal law is so 'extraordinary' that federal law transmutes state common-law claims into federal ones." *Fadhliah v. Societe Air France*, 987 F. Supp. 2d 1057, 1061 (C.D. Cal. 2013) (citing *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993)). Here, there is no basis to find complete preemption of Plaintiff's state law claims under the Montreal Convention. Article 29 of the Montreal Convention expressly recognizes that an action may be brought "under this Convention or in contract or in tort." Further, the Court finds that Plaintiff's claims fall outside of the substantive scope of the Montreal Convention for the reasons discussed above. Therefore, Plaintiff's state law claims do not give rise to federal jurisdiction under the doctrine of complete preemption.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff is ORDERED TO SHOW CAUSE why this case should not be dismissed based on lack of federal jurisdiction. Plaintiff may respond by filing either an amended complaint that addresses the deficiencies discussed above or a response that addresses why his current complaint is sufficient. Plaintiff's response shall be filed by **August 8, 2025**. If Plaintiff does not file a response by that date, the case will be reassigned to a United States district judge with a recommendation that it be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). Any amended complaint must include the caption and civil case number used in this order and the words FIRST AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the previous complaint, any amended complaint may not incorporate claims or allegations of Plaintiff's original complaint by reference, but instead must include all of the facts and claims Plaintiff wishes to present and all of the defendants he wishes to sue.

Plaintiff, who is not represented by counsel, is encouraged to consult with the Federal Pro

Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses for assistance.  The San Francisco Legal Help Center office is located in Room 2796 on the 15th floor at 450 Golden Gate Avenue, San Francisco, CA 94102.  The Oakland office is located in Room 470 S on the 4th floor at 1301 Clay Street, Oakland, CA 94612.  Appointments can be made by calling (415) 782-8982 or emailing federalprobonoproject@sfbar.org.  Lawyers at the Legal Help Center can provide basic assistance to parties representing themselves but cannot provide legal representation.

     **IT IS SO ORDERED.**

Dated:  July 14, 2025

_____
JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California

11